JAMES F. HARDIN, Plaintiff in Error, *vs.* WM. A. McCANSE, *et al.*, Defendants in Error.

1. *Ejectment—Matters dehors the record not to be inquired into.*—Matters not appearing on the face of the record cannot be inquired into collaterally in suit of ejectment.

2. *Execution—Death of one defendant in—Issue of against survivor, effect of.*—In ejectment brought by the purchaser at execution sale, his title would not under the Statutes of 1855, (p. 741, § 20 and p. 905, § 18,) be defeated by the fact that one of the parties, against whom the execution issued, had died between the date of the judgment and that of the execution, where it appeared that the property levied on and sold was that of the survivor. Under that statute the execution although irregular would not be void.

### Error to Greene Circuit Court.

*J. P. Ellis and J. F. Hardin*, for Plaintiff in Error.

I. The several executions issued against Brown and Thomas in favor of Lacy, after the death of Brown, were void, and the purchaser under them took no title. (See, § 20, p. 741, R. C., 1855; 4 How., 58, leading cases in part; 6 Ala., 657; 4 Ala., 735; 19 Mo., 650; 16 Mass., 190; 4 Wall., 237, in point; 2 McLean, C. C., 59; 4 Iredell L. R., p. 377; Woodcock vs Bennett, 1 Cow., 738.)

*McAfee & Phelps*, for Defendants in Error.

I. The execution was not void. (Johnson vs. Lynch, 3 Bibb., 334; 6 Blackf., (Ind.) 93; Bowdoin vs. Jordan, 9 Mass., 154; 2 Saund. (Eng.) p. 72; 2 Tidd's Pr., 1009; Shelton vs. Hamilton, 23 Miss., 496; Hodge vs. Mitchell, 27 Miss., 560; Coleman vs. McAnulty, 16 Mo., 173; Warder vs. Tainter, 4 Watt., 270; Day vs. Sharp, 4 Whart., 339; Douglas vs. Marsie, 16 Ohio, 271.)

II. In the case of Woodcock vs. Bennett, 1 Cow., p. 738, the only case cited by appellant, in which there was a living defendant and also a dead one; unlike the one here, the dead man's property was also sold. And further, it will be observed, that the validity of the sale under that execution was not the question upon which the case was determined. The point was never raised in the court below, or by counsel in the case in any of the courts.

VORIES, Judge, delivered the opinion of the court.

This was an action of ejectment brought in the Circuit Court of Lawrence county by Robert Kimmons against Mc-Canse and Paris, for the recovery of certain lands in the petition named, situate in said county. The venue of said cause was afterwards changed, by the agreement of the parties, to the Circuit Court for Greene county. After the commencement of the suit, James F. Hardin was substituted for Kimmons as party plaintiff upon his own motion.

The answer of the defendants denies all right in the plaintiff, in or to the east half of lot six of the northwest fractional quarter of section three, and the west half of lot six of the northeast fractional quarter of section three, southeast quarter of the southeast quarter of section eleven, or the north half of northeast quarter of section fourteen, all in township 29 of range 26, as described and charged in plaintiff's petition. As to the remainder of the land in the petition, defendants wholly disclaim any right or claim thereto, or that they have ever had any possession thereof, and deny the other allegations of the petition. Both parties claimed title to the lands in controversy by title derived from and through one Andrew W. Thomas; the plaintiff, by deed from said Thomas to Robert Kimmons, dated May 7th, 1861, and a deed from said Kimmons to himself, dated November 9th, 1867.

The defendant claimed title to part of the land in controversy, as set forth in his answer, by virtue of a deed from one Henry Childress, as Sheriff of Lawrence county, conveying said lands to defendants, dated November 12th, 1863, which said deed recited a judgment rendered by the Circuit Court of Lawrence county, in favor of Benjamin F. Lacy, as plaintiff, and against Alexander Brown and Andrew W. Thomas, rendered on the 13th day of November, 1860, the issue of an execution on said judgment, on the second day of October, 1863, directed to the Sheriff of said county, and a levy and sale of the same as the property of said Thomas, and to the other part or balance of the land named in his answer, by

virtue of a deed from said Sheriff, dated November 26th, 1866, reciting the same judgment, the issue of an execution thereon, on the 13th day of April, 1864, the levy of the same on the residue of said land as the property of said Brown and Thomas, and the advertisement and sale thereof to the defendants. The plaintiff objected to the reading of these deeds in evidence on the trial, because first, the judgment recited in said deeds and on which the executions were issued and the sales of the land made, were void, for the reason that no sufficient service of notice or summons was ever made on either of the defendants therein. Second, because Alexander Brown, one of the defendants in said judgment, was dead before either of said executions were issued, and said executions were issued against both of the defendants; for which reasons the sale and all proceedings under them were void, and the deeds therefore could pass no title to defendants. Third, because one of the defendants (Andrew W. Thomas) was in the State of Texas before either of said executions were issued, or said sales and deeds were made, namely, from February, 1862, to February, 1867, and within a disloyal district, and therefore said executions were void. Upon the hearing of these several objections to the admissibility of said Sheriff's deeds in evidence, the following facts were admitted to exist by the parties:.

"That Andrew W. Thomas lived in Missouri until February, 1862: that he then went into the State of Texas, and into a portion of said State which was disloyal to the government of the United States; that he remained in said State, and in said section of said State, until February, 1867; that said portion of said State of Texas, was not, after February, 1862, occupied, held or controlled at any time by the military or naval forces of the United States, until May, 1865; that said Thomas had a wife and family when he went to Texas, and that they remained and resided in the State of Missouri during his whole residence in Texas, and until he returned. It was further agreed by the parties, that Alexander Brown, against whom, with A. W. Thomas, certain judg-

17—VOL. LIII.

ments were rendered in the Lawrence Circuit Court, and under which judgments the defendants claim title to the land in controversy, died in the State of Texas, on the 13th day of January, 1863.

The entire record of the judgment and proceedings in the case of Lacy vs. Brown and Thomas was then read in evidence to support the objections of plaintiff to the service of a summons on defendants Brown and Thomas in said cause.

The court, after hearing all of the evidence in support of the objections urged to the receiving of said Sheriff's deeds in evidence, overruled said objections, and admitted said deeds in evidence. To which ruling of the court the plaintiff excepted. After this the plaintiff suffered a non-suit, with leave of the court to move to set the same aside, and afterwards filed his motion to set aside said non-suit, assigning as reasons therefor :

First—Because the court erred in admitting in evidence the said deeds given in evidence by the defendants.

Second—Because the court erred in overruling the objection made by plaintiff to the introduction of the deeds offered by the defendants.

This motion being overruled by the court, the plaintiff again excepted, and has brought the case to this court by writ of error.

It is objected by the plaintiff in error in this case to the reading of the deeds of the Sheriff in evidence, that it appears from the record in the said case of Lacy vs. Brown and Thomas, that no sufficient service was made of the summons in the case to give jurisdiction to the court over the parties defendant, and that the proceedings and judgment are therefore void. The service, as the same appears by the Sheriff's return, is as follows :

"Executed the within summons by leaving a copy of the petition and writ at the usual place of abode of the within Alexander Brown, with a white person of his family over the age of fifteen years, he being the first one served, and on the defendant, Andrew Thomas, by delivering to the said Andrew

Thomas a copy of the writ of summons. All done in Law-
rence county, Missouri, on the 17th day of April, 1860."

This return is not only in substantial conformity to, but it
is an exact compliance with, the Statutes of 1855 (which was
in force at the time) in reference to the service of process of
summons in this State. (Statutes of 1855, p. 1223, § 7.) The
objection to the deeds, on the ground of the insufficiency of
the service of the summons, was therefore properly overruled.
It was next objected to the admissibility of said deeds in evi-
dence, on the ground that Andrew W. Thomas, one of the
defendants in the case of Lacy vs. Thomas and Brown,
after the rendition of the judgment against him, left his
home in the State of Missouri, before the issue of the execu-
tions under which the land was sold, and went into the State
of Texas, in a portion thereof, which was disloyal to the
United States government, and not under the control of any
part of the authorities of the United States, where he re-
mained until after the sale of the land in controversy under
said executions.

It is difficult to see how the mere fact that Thomas volun-
tarily left the State, after a judgment had been rendered
against him, and that he went into Territory, occupied by the
confederate forces, could of itself paralyze the arm of the law
in this State, and destroy the jurisdiction of the courts and
the laws over his property situated here; but be that as it
may, it has been decided, by a late case in this court, that such
matters can not be inquired into in a collateral way upon a
trial of an action upon ejectment. (Groner vs. Smith, 49 Mo.,
318.) It follows that the second ground of objection made to
said deeds was also properly overruled by the Circuit Court.
The only remaining ground of objection, insisted on to the ad-
missibility of said deeds, is, that one of the defendants in the
judgments and executions, upon which the sheriff sold the
land in controversy, was dead at the time of, and before the
issuing of, said executions; and yet the executions were issued
against both defendants, which, it is insisted, is prohibited by
the statutes of the State, and consequently the executions as

well as the levy thereon, and the sale of the land in contro-versy, and the sheriff's deeds therefor, are all absolutely void, and confer no title to the land on the purchasers.

It is provided by the statutes of this State which were in force at the time of the issuing of the executions under con-sideration, as follows: "No execution shall issue upon any judgment or decree, rendered against the testator in his life-time, or against his executors or administrators after his death, which judgment or decree constitutes a demand against the estate of any testator or intestate within the meaning of an act entitled, "An Act respecting executors and administra-tors;" but all such demands shall be classed and proceeded on, in the County Court, as required by said act." (Revised Statutes, 1855, p. 741, § 20.)

It is also provided by the statutes concerning judgments, that "When there are several defendants in a judgment or decree, and some of them die before the same is satisfied, or carried into effect, the judgment or decree, if concerning real estate, shall survive against his or their heirs or devisees, and execution may issue against any surviving defendant or de-fendants; or such judgment or decree may be revived against the heirs or devisees of any or all such deceased defendants by *scire facias*, and execution may be sued out against the surviving defendant or defendants, and the heirs or devisees of such deceased defendants, or such of them as are made par-ties jointly; but if such judgment or decree concern the per-sonalty, execution shall be sued out only against the surviv-ing defendant or defendants; and if the lien of the judg-ment or decree has not expired, it shall be exhibited in the County Court for allowance, as other demands against the deceased defendant or defendants' estate; but if the lien has expired, the judgment or decree shall be revived against the executors or administrators of the deceased defendant or de-fendants, and then shall be proceeded with as hereinbefore di-rected." (Revised Statutes, 1855, p. 905, § 18.)

The two sections of the statute above quoted evidently had two principle objects in view: first, to wholly prevent the

issuing of an execution against a deceased person, after his death, and to compel all debts against deceased persons to be settled in the County Court, where they could be classed, and paid in conformity to the laws in such cases provided; and secondly, to provide a mode by which a plaintiff who had a judgment only concerning the personalty against several defendants, some of whom were dead, might have execution, and collect the amount of his judgment from the survivor or survivors. If the judgment was against only one defendant, and he died before execution issued, none could be issued against his property. (Miller vs. Doan, 19 Mo., 650.) But if the judgment was against several defendants, and one of them died, then the plaintiff could have an execution against the survivors only. In the case under consideration, the judgment was against Brown and Thomas. After the rendition of the judgment, and before any execution issued on it, Brown died. An execution was then issued against both of the defendants, but was only levied on the property of Thomas, who was living, and his property was sold and a sheriff's deed executed therefor. The question presented is, was the execution and sale by the sheriff, wholly void? By the rule of the common law, where there was only one defendant in a judgment, and he died, an execution issued on the judgment against such deceased defendant was wholly void; the parties in interest being changed, the process must also be changed. (Mitchell vs. Maxent, 4 Wall., 237; Erwin vs. Dundas, 4 How., 58.) In the last named case, the learned judge, who delivers the opinion of the court, uses this language:

"At common law, a judgment or recognizance in the nature of a judgment did not bind the lands of the defendant, nor did the execution disturb the possession, as it went only against the goods and chattels. The statute of Westm., 2 Ch. 18, (13 Ed. 1,) first subjected the lands of the debtor to execution on a judgment recovered against him, and gave the plaintiff the writ of *elegit*, by virtue of which the sheriff seized and delivered a moiety of the lands, until the debt was levied out of the rents and profits. Under this statute, a

moiety of the land is deemed bound from the rendition of the judgment. * * * Before the statute, a judgment was considered a charge only upon the personal estate of the defendant; since, a charge upon both the real and personal estate.

"Before and since the statute, in case of a judgment against two defendants, and the death of one, the charge of the judgment survived against the personal estate of the survivor; and execution could be taken out against him within the year without a *scire facias*, and the debt levied.* * * The writ, however, must be in form against both to correspond with the record; but it could be executed against the goods of the survivor only, or on making a suggestion of the death upon the record, the writ could be against the survivor alone. * * *

"It will be seen, therefore, from these authorities, that the same objections exist both in principle and in reason, as it respects the enforcement of a judgment against two, by a sale of the real estate on execution at the death of one, which have been shown to exist against the enforcement of a judgment against a single defendant after his death. For, as the charge of the judgment against the land does not survive, but continues upon the land of both after the death of one, the same as before, and cannot be enforced against the real estate of the survivor alone, as in the case of personalty, and the execution must therefore be issued against both, if issued at all, it is obvious the lands of the deceased in that event, are as liable to be sold by the sheriff, as the lands of the survivor."

Now it will be seen, that the very reasons given in the opinion above referred to, why an execution cannot issue against the survivor, and his land be sold in such case, have been obviated by our statute. The statute expressly provides that "an execution may be issued against the survivor in such case, and his land sold, and it may be further observed, that land and chattels are both subjected to sale by our laws, in the same way upon execution, and if there was no statute to the contrary, it would be proper under our laws, where the whole title to the land is sold upon execution just

as the whole title to personalty is sold, to issue the execution against both defendants, after the death of one, so as to make the writ conform to the record, and levy and sell the property of the survivor just as personalty was sold in such cases at common law; but our statute provides, that "the execution shall issue against the survivor only, and doubtless it is ir regular to issue the writ against both; but as the execution was only levied upon the property of the surviving defendant, and only his property sold, the question is, has not the law been substantially complied with?

In the case of (Woodcock vs. Bennett, 1 Cow., 711,) the execution was against both the deceased defendant and the survivor, and the property levied on was levied on and sold as the property of both; the writ in that case was held to be void. But no reference is made to any statute, by which executions may be issued against surviving defendants, such as we have here. In the case of Carnahan vs. Brown, 6 Blackf. 93, Carnahan recovered judgment in a personal action against one Ward; Brown entered himself as bail to stay the execution; By the laws of Indiana, after Brown entered himself as bail for Ward, he was considered and treated as a joint defendant in the judgment, and execution issued against both, after the expiration of the time for which the judgment was stayed. Before an execution was issued on the judgment, Ward died. Carnahan, after the death of Ward, sued out execution against both defendants. Brown filed a motion to quash the execution. The Circuit Court sustained the motion, and quashed the execution. The case was appealed to the Supreme Court, where Dewy, Judge, in delivering the opinion of the court uses this language: "We think there was no good reason for setting aside the execution. By virtue of the replevin, Brown became a joint debtor with Ward in the judgment. Judgments in personal actions where there are several plaintiffs or defendants, one of whom may have died after judgment rendered, may be enforced by or against the survivors without a *scire facias ;* but the writ of execution in such cases, in order to conform to the judgment, must be sued out in the joint names of all the plaintiffs or defendants."

The judgment was reversed and the execution held good. (See also, Bowdoin vs. Jordan, 9 Mass. 154; Johnston vs. Lynch, 3 Bibb. 334; 23 Miss. 496; 27 *Id.*, 560; Coleman vs. McAnulty, 16 Mo. 173, Warden vs. Tainter, 4 Watts. 278.)

It appears from the above cases, that where real and personal property can be sold under an execution, and the whole title to each pass by the sheriff's sale, that an execution may be issued against the survivor of two joint defendants, after the death of his co-defendant, but can only be served upon or executed against the property of the survivor, just as an execution could be issued at common law against the personalty. Our statute, however, directs that the execution shall only be issued against the survivor, but the execution in the present case having been levied only upon the property of the survivor, and his property only sold, the mistake of the clerk, in issuing the execution against both defendants, is only an irregularity; the execution was not void. To hold an execution void in such a case, would partake more of the enforcement of technical refinements than the administration of justice.

With the concurrence of the other judges, the judgment of the Greene Circuit Court is affirmed. Judge Sherwood did not sit.